UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| SHAKUR WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 20-3592 (KBJ) |
| ) | |
| BIOMEDICAL ADVANCED RESEARCH ) | |
| AND DEVELOPMENT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARDS ...................................................................................................... 3

I.      Rule 12(b)(1) – Lack of Subject Matter Jurisdiction ...................................... 3

II.     Rule 12(b)(6) – Failure to State a Claim ......................................................... 4

III.    A Pro Se Litigant's Pleadings Must Satisfy Pleading Requirements ............... 5

ARGUMENT ................................................................................................................... 6

I.      Plaintiff's FTCA Claims Should Be Dismissed................................................ 6

        A.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's FTCA Claims........ 6

        B.     Plaintiff Cannot Establish Any FTCA Claim ......................................... 8

               1.     FTCA Claim for Misappropriation of Trade Secrets................................. 8

               2.     FTCA Claim for Negligence........................................................... 13

II.     Plaintiff's Constitutional Claims Should Be Dismissed .................................. 15

        A.     Fourteenth Amendment Claims .......................................................... 16

        B.     Fifth Amendment Claims.................................................................... 16

               1.     Procedural Due Process Claim.......................................................... 16

               2.     Takings Clause Claims ................................................................... 18

               3.     "Equal Protection" Claims Under the Fifth Amendment ......................... 20

III.    Plaintiff's Claim Brought Under the Trade Secrets Act, 18 U.S.C. § 1905, Should
        Be Dismissed for Lack of Jurisdiction ................................................................. 21

IV.     Plaintiff's Antitrust Claims Should Be Dismissed............................................ 25

        A.     Plaintiff's Claims Under the Sherman Antitrust Act, 15 U.S.C. §§ 2 & 4,
               Should Be Dismissed for Lack of Jurisdiction or Failure to State a Claim ......... 26

        B.     Plaintiff's Claims Under the Federal Trade Commission Act, 15 U.S.C. § 45,
               Should Be Dismissed for Lack of Jurisdiction. ......................................... 27

        C.     Plaintiff's Claims Under Unspecified Section of Title 15 of the U.S. Code
               Should Be Dismissed for Failure to State a Claim ..................................... 27

V.      Plaintiff's Claims Under the American Inventors Protection Act, 35 U.S.C.
        § 297(b), Should Be Dismissed for Failure to State a Claim............................ 28

VI.     Plaintiff's Patent Infringement Claims Against the United States Should Be
        Dismissed for Lack of Jurisdiction. ..................................................................... 29

CONCLUSION................................................................................................................ 31

# TABLE OF AUTHORITIES

**C**ASES

Achagzai v. Broad. Bd. of Governors,
   109 F. Supp. 3d 67 (D.D.C. 2015) ........................................................................ 6

Alexander & Alexander Servs., Inc. v. SEC,
   Civ. A. No. 92-1112 (JHG), 1993 WL 439799 (D.D.C. Oct. 19, 1993) ................... 23

Al-Owhali v. Ashcroft,
   279 F. Supp. 2d 13 (D.D.C. 2003) ........................................................................ 3

Andrus v. Allard,
   444 U.S. 51 (1979) ............................................................................................... 18

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ............................................................................................. 4

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ............................................................................................. 4

Besson v. U.S. Dep't of Com., Civ. A. No. 18-2527 (APM),
   2020 WL 4500894 (D.D.C. Aug. 5, 2020) ............................................................ 25

Blackmar v. Guerre,
   342 U.S. 512 (1952) ............................................................................................. 1

Bolling v. Sharpe,
   347 U.S. 497 (1954) ............................................................................................. 20

Busby v. Capital One, N.A.,
   932 F. Supp. 2d 114 (D.D.C. 2013) ...................................................................... 4

C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.,
   310 F.3d 197 (D.C. Cir. 2002) .............................................................................. 17

Canadian Com. Corp. v. Dep't of Air Force,
   514 F.3d 37 (D.C. Cir. 2008) ................................................................................ 22

Canal Ref. Co. v. Corrallo,
   616 F. Supp. 1035 (D.D.C. 1985) ........................................................................ 23

Catalyst & Chem. Servs., Inc. v. Glob. Ground Support,
   350 F. Supp. 2d 1 (D.D.C. 2004) ........................................................... 9, 10, 11, 12

Chrysler Corp. v. Brown,
   441 U.S. 281 (1979) ............................................................................................. 22

Colbert v. U.S. Postal Serv.,
   831 F. Supp. 2d 240 (D.D.C. 2011) ...................................................................... 7

Connecticut LLC v. District of Columbia,
   336 F.3d 1068 (D.C. Cir. 2003) ............................................................................ 21

Crisafi v. Holland,
   655 F.2d 1305 (D.C. Cir. 1981) ................................................................. 5

Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,
   436 F. Supp. 3d 90 (D.D.C. 2019) .......................................................... 24

Curran v. Holder,
   626 F. Supp. 2d 30 (D.D.C. 2009) ............................................................ 3

Democratic Nat'l Comm. v. Russian Fed'n,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019) ...................................................... 9

Dial A Car, Inc. v. Transp., Inc.,
   884 F. Supp. 584 (D.D.C. 1995) ............................................................ 28

District of Columbia v. White,
   442 A.2d 159 (D.C. 1982) ...................................................................... 15

Doe 2 v. Trump,
   319 F. Supp. 3d 539 (D.D.C. 2018) .......................................................... 5

Doe v. District of Columbia,
   93 F.3d 861 (D.C. Cir. 1996) ................................................................. 17

Dougherty v. United States,
   156 F. Supp. 3d 222 (D.D.C. 2016), aff'd sub nom. Dougherty v. McKee, Civ. A. No. 16-
   5052, 2017 WL 2332591 (D.C. Cir. Feb. 2, 2017) .................................... 4

DSMC, Inc. v. Convera Corp.,
   479 F. Supp. 2d 68 (D.D.C. 2007) ................................................. 9, 10, 12

Edwards v. District of Columbia,
   616 F. Supp. 2d 112 (D.D.C. 2009) .......................................................... 7

Elkins v. District of Columbia,
   690 F.3d 554 (D.C. Cir. 2012) ............................................................... 17

Epps v. U.S. Att'y Gen.,
   575 F. Supp. 2d 232 (D.D.C. 2008) .......................................................... 6

Erickson v. Pardus,
   551 U.S. 89 (2007) .................................................................................. 5

FDIC v. Meyer,
   510 U.S. 471 (1994) ............................................................................... 15

Fed. Trade Comm'n v. Sysco Corp.,
   113 F. Supp. 3d 1 (D.D.C. 2015) ........................................................... 27

Food Mktg. Inst. v. Argus Leader,
   139 S. Ct. 2356 (2019) ........................................................................... 23

Fraternal Order of Police v. United States,
   152 F.3d 998 (D.C. Cir. 1998), reh'g granted on other grounds, 173 F.3d 898 (D.C. Cir. 1999)
   ........................................................................................................... 20

GAF Corp. v. United States,
    818 F.2d 901 ........................................................................................................... 6, 7

Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n,
    750 F.2d 1394 (7th Cir. 1984) .................................................................................. 23

Green v. Stuyvesant,
    505 F. Supp. 2d 176 (D.D.C. 2007) ........................................................................... 5

Herbert v. Nat'l Acad. of Scis.,
    974 F.2d 192 (D.C. Cir. 1992) ............................................................................... 3, 4

Holloway v. Bristol-Myers Corp.,
    485 F.2d 986 (D.C. Cir. 1973) ................................................................................. 27

Humberson v. U.S. Attorney's Off. for D.C.,
    236 F. Supp. 2d 28 (D.D.C. 2003), aff'd, No. 03-5073, 2003 WL 21768064 (D.C. Cir. July 16,
    2003) ...................................................................................................................... 17

IDX Sys. Corp. v. Epic Sys.,
    285 F.3d 581 (7th Cir. 2002) ................................................................................... 10

In re U.S. Office Prods. Co. Sec. Litig.,
    251 F. Supp. 2d 77 (D.D.C. 2003) ........................................................................... 14

Invention Submission Corp. v. Rogan,
    357 F.3d 452 (4th Cir. 2004) ................................................................................... 28

Jafarzadeh v. Nielsen,
    321 F. Supp. 3d 19 (D.D.C. 2018) ........................................................................... 16

James v. United States,
    48 F. Supp. 3d 58 (D.D.C. 2013) ............................................................................... 5

JCI Metal Prods. v. Dep't of Navy,
    Civ. A. No. 09-2139, 2010 WL 2925436 (S.D. Cal. July 23, 2010) ......................... 23

Jerome Stevens Pharmacy, Inc. v. FDA,
    402 F.3d 1249 (D.C. Cir. 2005) .............................................................................. 3, 8

Johnson v. Comm'n on Presidential Debates,
    202 F. Supp. 3d 159 (D.D.C. 2016) ......................................................................... 28

Johnson v. United States,
    547 F.2d 688 (D.C. Cir. 1976) ................................................................................. 14

Kelley v. District of Columbia,
    893 F. Supp. 2d 115 (D.D.C. 2012) ......................................................................... 20

Kokkonen v. Guardian Life Ins. Co. of Am.,
    511 U.S. 375 (1994) ................................................................................................... 3

Lewis v. District of Columbia,
    161 F. Supp. 3d 15 (D.D.C. 2015) ........................................................................... 18

Lillemoe v. U.S. Dep't of Agric.,
    344 F. Supp. 3d 215 (D.D.C. 2018) ......................................................................... 20

Lucas v. S.C. Coastal Council,
  505 U.S. 1003 (1992) ...................................................................................... 18, 19

M Cinema LLC v. Silver Cinemas Acquisition Co.,
  342 F. Supp. 3d 126 (D.D.C. 2018) ...................................................................... 27

Mathews v. Eldridge,
  424 U.S. 319 (1976) ............................................................................................. 16

McDonnell Douglas Corp. v. Widnall,
  57 F.3d 1162 (D.C. Cir. 1995) .............................................................................. 22

McNeil v. United States,
  508 U.S. 106 (1993) ........................................................................................ 5, 6, 7

Medina v. District of Columbia,
  517 F. Supp. 2d 272 (D.D.C. 2007) ...................................................................... 17

Megapulse, Inc. v. Lewis,
  672 F.2d 959 (D.C. Cir. 1982) .............................................................................. 22

Merrell Dow,
  478 U.S. ................................................................................................................ 27

Meyer Grp., Ltd. v. Rayborn, Civ. A.,
  No. 19-1945 (ABJ), 2020 WL 5763631 (D.D.C. Sept. 28, 2020) ..................... 9, 11

Moore v. Motz,
  437 F. Supp. 2d 88 (D.D.C. 2006) .......................................................................... 5

Morello v. District of Columbia,
  621 F. App'x 1 (D.C. Cir. 2015) ............................................................................ 18

Muhammad v. FDIC,
  751 F. Supp. 2d 114 (D.D.C. 2010) ........................................................................ 3

Navy, Marshall & Gordon, P.C. v. U.S. Int'l Dev. Cooperation Agency,
  557 F. Supp. 484 (D.D.C. 1983) ............................................................................. 1

Pa. Coal Co. v. Mahon,
  260 U.S. 393 (1922) ............................................................................................. 19

Painter v. FBI,
  537 F. Supp. 232 (N.D. Ga. 1982) .......................................................................... 1

Penn Cent. Transp. Co. v. New York City,
  438 U.S. 104 (1978) ............................................................................................. 19

Perrin v. United States,
  444 U.S. 37 (1979) .......................................................................................... 23, 24

Peter B. v. United States,
  579 F. Supp. 2d 78 (D.D.C. 2008) .......................................................................... 8

Petrolite Corp. v. EPA,
  519 F. Supp. 966 (D.D.C. 1981) ........................................................................... 19

Phillips v. Fed. Bureau of Prisons,
   271 F. Supp. 2d 97 (D.D.C. 2003) ....................................................................... 15

Powers-Bunce v. District of Columbia,
   479 F. Supp. 2d 146 (D.D.C. 2007) ..................................................................... 16

Pub. Citizen Health Rsch. Grp. v. FDA,
   704 F.2d 1280 (D.C. Cir. 1983) .......................................................................... 23

Quezada v. Marshall,
   915 F. Supp. 2d 129 (D.D.C. 2013) ..................................................................... 21

Research Servs., Inc. v. Resolution Econ., LLC,
   208 F. Supp. 3d 219 (D.D.C. 2016) .................................................................. 9, 11

Roth v. King,
   449 F.3d 1272 (D.C. Cir. 2006) .......................................................................... 19

Ruckelshaus v. Monsanto Co.,
   467 U.S. 986 (1984) ...................................................................................... 18, 19

S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.,
   483 U.S. 522 (1987) ............................................................................................ 16

Sea-Land Serv., Inc. v. Alaska R.R.,
   659 F.2d 243 (D.C. Cir. 1981), cert. denied, 455 U.S. 919 (1982) ..................... 26

Shapiro v. Dep't of Just., Civ. A. No. 12-0313 (BAH),
   2020 WL 3615511 (July 2, 2020) ........................................................................ 24

Simms v. District of Columbia,
   699 F. Supp. 2d 217 (D.D.C. 2010) ..................................................................... 14

Source Prod. & Equip. Co. v. Schehr,
   Civ. A. No. 16-17528, 2019 WL 4752058 (E.D. La. Sept. 30, 2019) ................ 9, 10

Stroughter v. United States,
   89 Fed. Cl. 755 (2009) ........................................................................................ 30

Sturdza v. United Arab Emirates,
   658 F. Supp. 2d 135 (D.D.C. 2009) ....................................................................... 5

Sutliff, Inc. v. Donovan Cos., Inc.,
   727 F.2d 648 (7th Cir. 1984) .............................................................................. 28

Swarthout v. Cooke,
   562 U.S. 216 (2011) ............................................................................................ 16

Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,
   535 U.S. 302 (2002) ............................................................................................ 18

Tarpeh-Doe v. United States,
   28 F.3d 120 (D.C. Cir. 1994) ................................................................................ 8

Tookes v. United States,
   811 F. Supp. 2d 322 (D.D.C. 2011) ....................................................................... 7

Total Health Network Corp.,
321 F. Supp. 3d 76 (D.D.C. 2018) .......................................................................... 27

Trifax Corp. v. District of Columbia,
53 F. Supp. 2d 20 (D.D.C. 1999) ............................................................................ 14

Trudeau v. Fed. Trade Comm'n,
456 F.3d 178 (D.C. Cir. 2006) .................................................................................. 5

UMC Dev., LLC v. District of Columbia,
401 F. Supp. 3d 140 (D.D.C. 2019) ........................................................................ 19

United States v. Cooper Corp.,
312 U.S. 600 (1941) ................................................................................................. 26

United States v. Kugel,
947 F.2d 1504 (D.C. Cir. 1991) .............................................................................. 14

Vanover v. Hantman,
77 F. Supp. 2d 91 (D.D.C. 1999) .............................................................................. 5

Venetian Casino Resort, LLC v. EEOC,
530 F.3d 925 (D.C. Cir. 2008) .......................................................................... 21, 22

Vill. of Willowbrook v. Olech,
528 U.S. 562 (2000) ................................................................................................. 20

Whittaker v. CSOSA,
401 F. Supp. 3d 170 (D.D.C. 2019) ........................................................................ 14

Wise v. United States,
145 F. Supp. 3d 53 (D.D.C. 2015) .......................................................................... 14

Women Prisoners of D.C. Dep't of Corr. v. District of Columbia,
93 F.3d 910 (D.C. Cir. 1996) .................................................................................. 21

WP Co. LLC v. U.S. Small Bus. Admin.,
No. CV 20-1240 (JEB), 2020 WL 6504534 (D.D.C. Nov. 5, 2020) ...................... 25

**STATUTES**

5 U.S.C. § 552(b)(4) ...................................................................................................... 22

5 U.S.C. § 706(2)(A) ...................................................................................................... 21

15 U.S.C. § 4 ............................................................................................................ 25, 26, 27

15 U.S.C. § 45 ................................................................................................ ii, 1, 25, 27

15 U.S.C. § 45(a)(1) ...................................................................................................... 27

15 U.S.C. §§ 2 & 4 ........................................................................................... ii, 1, 25, 26

15 U.S.C.§ 7 .................................................................................................................. 26

18 U.S.C. § 1839(3)(A) .................................................................................................. 9

18 U.S.C. § 1839(5)(A)-(B) .......................................................................................... 11

18 U.S.C. § 1905 ................................................................................ ii, 1, 21, 22

28 U.S.C. § 1346 .......................................................................................... 1

28 U.S.C. § 1346(b) ...................................................................................... 6

28 U.S.C. § 1442(a)(1) .................................................................................. 2

28 U.S.C. § 1498 ........................................................................................ 30

28 U.S.C. § 1498(a) .................................................................................... 30

28 U.S.C. § 2675(a) ...................................................................................... 7

35 U.S.C. § 297 ......................................................................................... 28

35 U.S.C. § 297(b) ........................................................................... ii, 1, 28, 29

35 U.S.C. § 297(c)(3)(A) .............................................................................. 29

D.C. Code § 36-408 .................................................................................... 10

D.C. Code § 36-401(4)(B) .............................................................................. 9

## RULES

Fed. R. Civ. P. 8(a)(2) ................................................................................... 4

Federal Rules of Civil Procedure 8 ................................................................... 2

Federal Rules of Civil Procedure 12(b)(1) ........................................................ 1, 3

Rule 12(b)(6) .............................................................................................. 4

## REGULATIONS

16 C.F.R. §§ 233.1 ..................................................................................... 27

28 C.F.R. § 14.12(a) ..................................................................................... 7

## PRELIMINARY STATEMENT

Plaintiff William Shakur ("Plaintiff") has filed suit against the U.S. Department of Health and Human Services (the "Department") and its component-agency the Biomedical Advanced Research and Development Authority ("BARDA") (collectively, "Defendants")[1], alleging violations of:

- the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA");

- the due process and equal protection provisions of the Fifth and Fourteenth Amendments of the U.S. Constitution;

- the Trade Secrets Protection Act, 18 U.S.C. § 1905;

- the Sherman Antitrust Act, 15 U.S.C. §§ 2, 4;

- the Federal Trade Commission Act, 15 U.S.C. § 45; and

- the American Inventors Protection Act, 35 U.S.C. § 297(b).

See Ex. A at 8-19.[2] Although Plaintiff's Amended Complaint [ECF No. 6] is far from clear, Plaintiff appears to allege that he invented a "breakthrough contact-tracing app" for COVID-19 named "ConTAGV Trac™" and that, after he disclosed "confidential information" about the

---

[1] Plaintiff's Amended Complaint is being read liberally to be against the United States because neither HHS nor BARDA can be sued eo nomine. See Navy, Marshall & Gordon, P.C. v. U.S. Int'l Dev. Cooperation Agency, 557 F. Supp. 484, 488 (D.D.C. 1983) ("[A] federal agency cannot be sued for damages eo nomine without explicit statutory authorization.") (citing Blackmar v. Guerre, 342 U.S. 512, 514–15 (1952); Painter v. FBI, 537 F. Supp. 232, 236 (N.D. Ga. 1982).

[2] Upon review of the 123 pages of materials collectively contained in ECF Nos. 6 and 6-1, Defendant has determined that pages 27–34 of ECF No. 6 and pages 1–2, 6–7, 11–16 of ECF No. 6-1 appear to be one unique set of all pages filed with the Court by Plaintiff. For the convenience of the Court and the parties, Defendant has attached to this Memorandum as "Exhibit A" a copy of this abbreviated version of ECF No. 6 and 6-1 and has bates numbered these pages for ease of reference. Throughout this document, Defendant will reference pages in this Exhibit by these bates numbers. The numbered paragraphs of Plaintiff's Amended Complaint found at pages 12 through 17 of Exhibit A will be referred to by page and paragraph numbers (i.e., Ex. A ¶ __).

application to Defendants via email and through BARDA's COVID countermeasures website, Defendants improperly disclosed and used his intellectual property.  This Court should dismiss with prejudice all claims that Plaintiff attempts to assert in this matter.[3]

## **BACKGROUND**

On September 19, 2020, Plaintiff filed suit against BARDA in the D.C. Superior Court. See Williams v. Biomedical Advanced Rsch. & Dev. Auth., Civ. A. No. 2020 CA 004544 B (D.C. Super. Ct.).  On December 10, 2020, the United States filed a Notice of Removal pursuant to 28 U.S.C. § 1442(a)(1) and § 1446, and the case was removed to this Court.  See ECF Nos. 1, 4. On December 18, 2020, this Court issued an Order [ECF No. 5] instructing that "on or before January 22, 2021, Plaintiff shall file an amended Complaint that comports with Federal Rules of Civil Procedure 8 and 10 and the Local Civil Rules of this Court, and that sets forth each claim that he asserts in this matter."  ECF No. 5 (emphasis removed).

On January 29, 2021, Plaintiff filed his Amended Complaint, which was docketed by the Court as ECF Nos. 6 and 6-1 and added the Department as a named Defendant.  Plaintiff's Amended Complaint is short on details and factual allegations but repeatedly alleges that he provided confidential information to the government, see Ex. A ¶¶ 1, 2, 8, 22, 27, 31, 32, 33, 37, 45, 46, 52, 54, and that this confidential information was disclosed by the government, id. at ¶¶ 2, 8, 27, 32, 45.  Plaintiff also asserts that Defendants acted unlawfully when they did not contact him for a meeting after he disclosed information about his "innovation" to them.  Id. at ¶¶ 10, 38, 46.  As damages, Plaintiff seeks $4.2 to $4.6 billion dollars and a potential injunction on the

---

[3]      Defendants do not concede that Plaintiff has, in fact, invented a contact tracing application; however, for the purpose of this motion only, Defendants will not contest the invention of the contact tracing application because Plaintiff's claims fail on multiple other grounds.

development of contact tracing apps.  Id. at ¶ 56.  Defendant now files this motion to dismiss with

prejudice all claims asserted in Plaintiff's "Amended Complaint."

<strong><u>LEGAL STANDARDS</u></strong>

**I.    Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure ("Rule") 12(b)(1) requires dismissal of claims where the

Court "lack[s] jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  The Rule "presents

a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine

whether it has subject-matter jurisdiction in the first instance."  Curran v. Holder, 626 F. Supp. 2d

30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).  It is "'presumed that a cause

lies outside [the federal courts'] limited jurisdiction,' unless the plaintiff establishes by a

preponderance of the evidence that the Court possesses jurisdiction[.]"  Muhammad v. FDIC, 751

F. Supp. 2d 114, 118 (D.D.C. 2010) (first alteration in original) (quoting Kokkonen v. Guardian

Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)), aff'd, 448 F. App'x 74 (D.C. Cir. 2012).

A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways:  a

facial challenge or a factual challenge.  In a facial challenge, the court may decide the motion

based solely on the factual allegations in the Complaint.  Herbert v. Nat'l Acad. of Scis., 974 F.2d

192, 197 (D.C. Cir. 1992); Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) ("A facial

challenge attacks the factual allegations of the Complaint that are contained on the face of the

Complaint.") (internal quotations and citations omitted).  In contrast, to determine the existence of

jurisdiction in a factual challenge, a court may look beyond the allegations of the Complaint,

consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.

See Jerome Stevens Pharmacy, Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (noting that,

with respect to a factual challenge, the district court may consider materials outside of the

pleadings to determine whether it has subject matter jurisdiction over the claims); Herbert, 974 F.2d at 197 (same).  Under either analysis, all claims in Plaintiff's Complaint must be dismissed.

## II.      Rule 12(b)(6) – Failure to State a Claim

To survive a Rule 12(b)(6) motion, a Complaint must comply with Rule 8, which requires that the Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); Dougherty v. United States, 156 F. Supp. 3d 222, 230 (D.D.C. 2016), aff'd sub nom. Dougherty v. McKee, Civ. A. No. 16-5052, 2017 WL 2332591 (D.C. Cir. Feb. 2, 2017); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (explaining that this requirement is meant to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (citation omitted).  "Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Busby v. Capital One, N.A., 932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting Twombly, 550 U.S. at 555).

In other words, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This means that "mere conclusory statements" of misconduct are not enough to make out a cause of action against a defendant.  Id.  A Complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. 662.

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations."  Busby, 932 F. Supp. 2d at 134 (citation omitted).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation,"

nor an inference that is unsupported by the facts set forth in the Amended Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006).

When ruling on a motion under Rule 12(b)(6), "[t]his Court has held that 'where a document is referred to in the complaint or is central to the plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'"  Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) aff'd, 38 F. App'x 4 (D.C. Cir. 2002); see also Doe 2 v. Trump, 319 F. Supp. 3d 539, 541 (D.D.C. 2018).

## III.    A Pro Se Litigant's Pleadings Must Satisfy Pleading Requirements

Although a pro se plaintiff's Complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers[,]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure," Sturdza v. United Arab Emirates, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted); see also McNeil v. United States, 508 U.S. 106, 113 (1993).  Consequently, "even a pro se plaintiff must meet his burdens of proving subject matter jurisdiction and stating a claim for relief."  James v. United States, 48 F. Supp. 3d 58, 63 (D.D.C. 2013); see Green v. Stuyvesant, 505 F. Supp. 2d 176, 177 (D.D.C. 2007) (dismissing Complaint where pro se plaintiff failed to prove subject matter jurisdiction); Moore v. Motz, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (noting that "[e]ven a pro se plaintiff's inferences . . . need not be accepted" if they "are unsupported by the facts set out in the Complaint" (citation omitted)); see also Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (noting that a pro se Complaint must state a claim upon which relief can be granted).

## ARGUMENT

### I.   Plaintiff's FTCA Claims Should Be Dismissed

While unclear and often rambling, Plaintiff's Amended Complaint appears to assert two separate FTCA claims:

- one claim asserts that Defendants committed the tort of misappropriation of trade secrets when they allegedly disclosed "confidential" information provided to them by Plaintiff regarding his contact tracing application, see Ex. A ¶¶ 1, 2, 11, 45, and

- the other claim asserts that Defendants committed negligence when they failed to schedule a meeting with Plaintiff regarding his contact tracing application after he submitted information about the application to Defendants, see id. at ¶¶ 1, 10, 38,

Both FTCA claims should be dismissed because (i) Plaintiff's Amended Complaint fails to allege facts sufficient to establish this Court's jurisdiction over any FTCA claim; (ii) Plaintiff has not exhausted administrative remedies for any FTCA claim, which is a jurisdictional prerequisite to bringing such a claim; (iii) Plaintiff has not alleged facts sufficient to state a claim with respect to either FTCA claim he tries to assert; and (iv) Plaintiff will not be able to establish facts that would allow him to succeed on the merits of either FTCA claim he attempts to assert.

### A.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's FTCA Claims

"When a plaintiff seeks monetary damages against a federal agency for certain torts committed by federal employees, the only possible basis for court jurisdiction would be the [FTCA], 28 U.S.C. § 1346(b)." Epps v. U.S. Att'y Gen., 575 F. Supp. 2d 232, 238 (D.D.C. 2008). "The FTCA is a 'limited waiver of the United States' sovereign immunity,' and, thus, 'absent full compliance with the conditions the Government has placed upon its waiver, courts lack jurisdiction to entertain tort claims against it.'" Achagzai v. Broad. Bd. of Governors, 109 F. Supp. 3d 67, 69 (D.D.C. 2015) (quoting GAF Corp. v. United States, 818 F.2d 901, 904 and n.86 (D.C. Cir. 1987)). As a condition of waiving sovereign immunity, the FTCA requires that, prior to filing suit, the claimant must exhaust administrative remedies. McNeil, 508 U.S. at 113.

The procedure to exhaust administrative remedies is specific:  a plaintiff must present the agency with both (1) a written statement sufficiently describing the injury and facts to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.  Tookes v. United States, 811 F. Supp. 2d 322, 331 (D.D.C. 2011) (citing GAF Corp., 818 F.2d at 905); 28 C.F.R. § 14.12(a) (stating that an FTCA claim shall be deemed "presented" when a federal agency receives an SF-95 "or other written notification of an incident, accompanied by a claim for money damages in sum certain."); 28 U.S.C. § 2675(a) ("[A]n action shall not be instituted against the United States" for damages caused by the negligent or wrongful act of any employee of the government "unless the claimant shall have first presented the claim to the appropriate Federal agency.").  Before a claimant may file a case in federal court, the agency must have either denied the claim in writing or failed to provide a final disposition within six months of the filing of the claim.  McNeil, 508 U.S. at 111; Edwards v. District of Columbia, 616 F. Supp. 2d 112, 117 (D.D.C. 2009).  Additionally, because "administrative exhaustion is a jurisdictional prerequisite to the maintenance of a tort suit against the United States[,] . . . a plaintiff must . . . plead administrative exhaustion in an FTCA case."  Colbert v. U.S. Postal Serv., 831 F. Supp. 2d 240, 243 (D.D.C. 2011) (internal quotations and citations omitted) (citing Fed. R. Civ. P. 8(a)(1)).

The Court should dismiss Plaintiff's FTCA claims for lack of jurisdiction because Plaintiff cannot establish that he has exhausted administrative remedies.  Plaintiff's Amended Complaint lacks any factual allegations addressing administrative exhaustion.  More significantly, according to Defendants' records, Plaintiff has not presented the agency with a written statement describing the injury alleged in this action and requesting a sum-certain for any alleged damages.  The Department's Claims Office, which maintains a computerized database that houses records related to the filing of administrative tort claims with the Department, has conducted a search for any

administrative tort claims filed by Plaintiff.  Ex. 2 at ¶¶ 4-5 (Decl. of Meredith Torres).  The search of relevant records of the Department has failed to reveal the receipt of a SF-95: Claim for Damage, Injury, or Death or any other written notification of Plaintiff's alleged injuries or a claim for monetary damages.  Id. at ¶ 5.  Accordingly, Plaintiff's Complaint should be dismissed because he has failed to satisfy the jurisdictional requirement to exhaust administrative remedies prior to filing suit.

### B.   Plaintiff Cannot Establish Any FTCA Claim[4]

### 1.   FTCA Claim for Misappropriation of Trade Secrets

Plaintiff alleges that Defendants improperly handled allegedly confidential information regarding his contact-tracing app by disclosing said information to Apple and Google in April 2020.[5]  Ex. A ¶¶ 1, 2, 11, 39, 45.  Although Plaintiff's Amended Complaint alleges this as a "negligence" claim, it is more accurately analyzed as a misappropriation of trade secrets claim.  See Jerome Stevens, 402 F.3d at 1254-56 (explaining that, because the claim styled as "negligence" by the plaintiff alleged wrongful disclosure of confidential and trade secret information on FDA's website, it was more appropriately classified as a tort of misappropriation of trade secrets, which is actionable under the FTCA); see also Peter B. v. United States, 579 F. Supp. 2d 78, 82-83 (D.D.C. 2008) ("The label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states.").

---

[4]    "Tort liability under the FTCA is determined according to the law of the state where the alleged acts or omissions occurred."  Tarpeh-Doe v. United States, 28 F.3d 120, 123 (D.C. Cir. 1994).  Accordingly, each of Plaintiff's FTCA claims will be evaluated using District of Columbia law.

[5]    Plaintiff's Amended Complaint may also be alleging improper disclosure to other third-parties, but this is not clear; in any event, the arguments asserted by Defendants would apply to any third-party to whom Plaintiff alleges the information was disclosed.

"To establish a trade secret misappropriation claim [under District of Columbia law], Plaintiff must demonstrate (1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose." DSMC, Inc. v. Convera Corp., 479 F. Supp. 2d 68, 77 (D.D.C. 2007) (citing D.C. Code § 36-401). Plaintiff has not sufficiently alleged—nor can he establish—either of the required elements for a trade secret misappropriation claim.

<b>(a)  Plaintiff Fails to Establish that this Case Involves a Trade Secret</b>

"The 'threshold inquiry' in every trade secret case is 'whether or not there [is] a trade secret to be misappropriated.'" DSMC, 479 F. Supp. 2d at 77–78 (alteration in original) (quoting Catalyst & Chem. Servs., Inc. v. Glob. Ground Support, 350 F. Supp. 2d 1, 8 (D.D.C. 2004)). "To qualify as a trade secret, '(1) the information must be secret; (2) its value must derive from its secrecy; and (3) its owner must use reasonable efforts to safeguard its secrecy.'" Econ. Research Servs., Inc. v. Resolution Econ., LLC, 208 F. Supp. 3d 219, 232 (D.D.C. 2016) (quoting DSMC, 479 F. Supp. 2d at 77); see Meyer Grp., Ltd. v. Rayborn, Civ. A. No. 19-1945 (ABJ), 2020 WL 5763631, at *6 (D.D.C. Sept. 28, 2020) ("[A] factor to be considered in the trade secret analysis is whether the owner of the secret took reasonable steps to ensure the secrecy of the information." (citing D.C. Code § 36-401(4)(B); 18 U.S.C. § 1839(3)(A)).

To survive a motion to dismiss, at a minimum, "a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value." Democratic Nat'l Comm. v. Russian Fed'n, 392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019) (analyzing trade secret misappropriation claim under D.C. Uniform Trade Secrets Act); see DSMC, 479 F. Supp. 2d at 78 (indicating that, to be sufficient, plaintiff's allegations must identify specific features of product that it claims are trade secrets rather than pointing to an entire product); Source Prod. & Equip. Co. v. Schehr, Civ. A. No. 16-17528, 2019 WL 4752058, at *5 (E.D. La. Sept. 30, 2019) ("[T]he

9

plaintiff must plead sufficient facts to put the defendant on notice of what is alleged to have been misappropriated.").

Here, Plaintiff's Amended Complaint makes the naked assertions that "his property ConTAGV Trac(TM) [is] a breakthrough contact-tracing or intellectual property system," Ex. A ¶ 1, and it is a "contact-tracing innovation," see, e.g., id. at ¶ 7, but nowhere does Plaintiff allege any facts specifying anything unique or proprietary about the technology that makes it a legally protectable trade secret, see generally id. In essence, Plaintiff does nothing more than identify a kind of technology without providing any details for the Court or Defendants to identify what about the technology was allegedly misappropriated; this is insufficient to state a claim for trade secret misappropriation. See IDX Sys. Corp. v. Epic Sys., 285 F.3d 581, 583–84 (7th Cir. 2002) (a "plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]" (cited with approval in DSMC, 479 F. Supp. 2d at 78) (alteration in DSMC)).[6]

There can also be no doubt that Plaintiff did not take reasonable steps to ensure secrecy of whatever information he now claims was misappropriated. The information in question was submitted to BARDA through its website, www.medicalcountermeasures.gov, which describes itself as "a portal for the 2019 novel coronavirus (COVID-19) medical countermeasures task force

---

[6]      "[W]hen interpreting the [D.C. Uniform Trade Secrets Act], it is appropriate for this Court to consider how courts in other jurisdictions have interpreted different states' trade secret acts." DSMC, 479 F. Supp. 2d at 80 (citing Catalyst & Chem. Servs., 350 F. Supp. 2d at 8 n.3 (collecting cases)). This is because "[t]he [D.C. Uniform Trade Secrets Act] is based on the Uniform Trade Secrets Act ('UTSA'), as are the trade secret statutes of a number of states. Moreover, the [D.C. Uniform Trade Secrets Act] is intended to 'make uniform the law with respect to trade secrets' among the District of Columbia and other states adopting the UTSA." Id (quoting D.C. Code § 36-408).

as a single point of entry for the submission of market research packages and meeting requests

from interested stakeholders."  The webpage states, in relevant part:

> We ask for a brief description of your product or technology,
> accompanied by a slide deck, manuscript, publications, or other non-
> confidential information of your choosing.  Please note that . . . we
> will use any information you present as market research, . . . and
> your submission will be shared across U.S. Government agencies
> involved in COVID-19 medical countermeasure research and
> development.

Id.  Plaintiff's Amended Complaint even acknowledges that the website stated the submissions are

non-confidential.  See Ex. A ¶ 48 ("Defendant is telling innovators and academia to send

confidential designs as non confidential? – the best defense for intentional tort is 'Consent'.").

Because Plaintiff voluntarily submitted information to a website that he acknowledges stated the

information would not be kept confidential, he cannot reasonably claim that he treated the

information with the reasonable amount of confidentiality necessary to deem it a "trade secret"

within the meaning of District of Columbia law.  See Econ. Rsch. Servs., 208 F. Supp. 3d at 233

(dismissing trade secret misappropriation claim where "the Complaint contain[ed] no factual

allegations that would support an inference that any of the information defendants allegedly

misappropriated was valuable because of its secrecy or that [the plaintiff] used 'reasonable efforts

to safeguard its secrecy.'").

## (b)  Plaintiff Cannot Establish that the Allegedly "Confidential" Information Was Misappropriated

Under relevant District of Columbia law, "'misappropriation' means either '(A) acquisition

of a trade secret of another by a person who knows or has reason to know that the trade secret was

acquired by improper means; or (B) disclosure or use of a trade secret of another without express

or implied consent by a person.'"  Meyer Grp., 2020 WL 5763631, at *6 (quoting 18 U.S.C.

§ 1839(5)(A)-(B); D.C. Code § 36-401(2)(A)-(B)).  The D.C. Uniform Trade Secrets Act "defines

'improper means' as 'theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means.'" <u>DSMC</u>, 479 F. Supp. 2d at 80 (quoting D.C. Code § 36-401(1)).

Even if Plaintiff had sufficiently identified a trade secret and acted in a manner to protect its secrecy—which he has not—he still could not succeed on a FTCA claim based on trade secret misappropriation because he cannot establish (and does not allege facts sufficient to infer) that Defendants' acquisition of the alleged "confidential" information was through improper means or that Defendants were under a duty to refrain from disclosing or using the information he provided. As discussed above, Plaintiff voluntarily submitted the information to Defendants' website and, at the time he provided the information to Defendants, he was advised that he should only disclose information that was non-confidential and that such information would be shared with others. Thus, even if Defendants had disclosed or used the information provided by Plaintiff to create a contact tracing app—which they did not—Plaintiff's own conduct of voluntarily providing the information to Defendants without an express or implied guarantee of confidentiality eviscerates any trade secret misappropriation claim he might have had.

In any event, even if Plaintiff had established that Defendants had a duty not to disclose any information that he provided through the BARDA website, his claim would still fail because he has not sufficiently alleged—and cannot establish—that Defendants did, in fact, disclose or use the information he provided to them.  <u>See</u> <u>Catalyst & Chem. Servs.</u>, 350 F. Supp. 2d at 10-11 (holding that a "requirement of a trade secret misappropriation claim is a showing that the defendant used or disclosed the protected information.").  Plaintiff's allegations that Defendants improperly disclosed confidential information about his alleged "breakthrough . . . innovation" are conclusory assertions that fail to point to evidence that a disclosure was ever made.

For example, Plaintiff has <u>not</u> pointed to any currently existing contact tracing application and identified the unique technology in that application that is allegedly derived from the confidential information he alleges he provided to Defendants.  He has also not identified any document that supports his assertions that Defendants used or disclosed the information he provided.  Additionally, although Plaintiff broadly alleges that the Department "distributed the app (product design) through a Secretary of HHS's webinar on the use of contact-tracing app," Ex. A ¶ 12, the Amended Complaint is void of any details, including failing to identify what specific information was disclosed (i.e., what are the parameters of the trade secret at issue), when this webinar allegedly occurred (i.e., when the allegedly unlawful disclosure was made), and/or who attended this webinar (i.e., to whom the alleged disclosure was made).

Instead, he makes the unsupported assertion that development of contract tracing applications by the Department, BARDA, or private companies is proof that his confidential information was misappropriated by Defendants.  <u>See</u> Ex. A ¶¶ 11, 39, 46, 54.  And he provides no logical or factual connection to tie the development of a product by others to the purported misappropriation.  Given that Plaintiff's only alleged proof of a disclosure is his own belief that no one else could have created a contracting tracing application during a worldwide pandemic, his bare bones allegations are insufficient to establish even an inference that a use or disclosure did, in fact, take place.  Consequently, this Court should grant Defendants' request to dismiss with prejudice Plaintiff's trade secret misappropriation claim brought under the FTCA.

### 2.   FTCA Claim for Negligence

The second FTCA claim asserted in Plaintiff's Amended Complaint appears to be an allegation that Defendants were negligent for failing to schedule a meeting with him to learn more about or develop his contact tracing application after he contacted the Department and BARDA

regarding the product.  See Ex. A ¶ 1 ("The Defendant would owe Plaintiff a legal duty of care under the circumstance of resolution for the population in Pandemic 2020. . . .  Through the public health agency's inability to carry out their duty, they breached its duty of care which is immediate contact of Plaintiff on the direct occupation-related matter."), see also id. ¶ 10 ("Negligence was performed through l: Act- No simple email or telephone call.  The Secretary of Health only needed to give an engineer a response on a under 10 minute overview of new digital contact-tracing development."), ¶ 38 ("I emailed three top U.S. Dept. H.H.S. government officials. . . .  The reason three top health officials would not act on a position responsibility would have to be labelled an agency area of negligence.").

"To establish a claim of negligence under District of Columbia law, the Plaintiff must allege that 1) the defendant owed a duty of care to the plaintiff, 2) the defendant breached that duty of care, and 3) the defendant's breach proximately caused damage to the plaintiff."  Whittaker v. CSOSA, 401 F. Supp. 3d 170, 185 (D.D.C. 2019) (citing Wise v. United States, 145 F. Supp. 3d 53, 60 (D.D.C. 2015)).  Significantly, there can be no recovery on a theory of negligence unless a plaintiff shows there was a breach of a duty owed to him by the government.  United States v. Kugel, 947 F.2d 1504, 1507 (D.C. Cir. 1991); Johnson v. United States, 547 F.2d 688, 692 (D.C. Cir. 1976).  Thus, the "plaintiff must allege facts which show that the defendant breached some legally imposed duty owed to the plaintiff."  Simms v. District of Columbia, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (emphasis added); Trifax Corp. v. District of Columbia, 53 F. Supp. 2d 20, 29 (D.D.C. 1999) (applying District of Columbia law and granting a defendant's motion to dismiss a negligence claim when the plaintiff could not demonstrate the existence of a duty).  Additionally, a Complaint alleging negligence may not rest on mere "conclusory assertions" as to the existence of any element of the claim, including the existence of a duty.  In re U.S. Office Prods. Co. Sec.

Litig., 251 F. Supp. 2d 77, 98 (D.D.C. 2003) (citing District of Columbia v. White, 442 A.2d 159, 162 (D.C. 1982)).

Plaintiff's negligence-based FTCA claim should be dismissed because Defendants had no legal duty to meet with Plaintiff about his contact tracing application.  Plaintiff's Amended Complaint fails to cite a statute, contract, or other source of authority that placed a duty upon Defendants to meet with him in response to his submission to the BARDA website or any email he claims to have sent to the Defendants.  On the contrary, in the same section of the BARDA website that advised Plaintiff that submissions were "for market research purposes only", the website also advised Plaintiff that "submission is no guarantee of a meeting or funding."  See https://www.medicalcountermeasures.gov/request-barda-techwatch-meeting/ (visited 2/10/2021). Absent any duty to meet with Plaintiff, there can be no negligence claim premised on the Defendants' decision not to meet with him.  Accordingly, this Court should dismiss this FTCA claim with prejudice.

## II.     Plaintiff's Constitutional Claims Should Be Dismissed

Plaintiff seeks to recover damages from the United States for alleged violations of due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, see Ex. A ¶ 8, and violation of Equal Protection Clause, see id. at ¶¶ 3, 50, 51; however, these claims should be dismissed.[7]

---

[7]     To the extent Plaintiff attempts to assert these claims under the FTCA, they should be dismissed because the FTCA does not waive sovereign immunity for constitutional claims.  See FDIC v. Meyer, 510 U.S. 471, 477-78 (1994) (constitutional tort claim not cognizable under FTCA); Phillips v. Fed. Bureau of Prisons, 271 F. Supp. 2d 97, 101 (D.D.C. 2003) (dismissing claim alleging BOP violated prisoner's due process under the Fifth Amendment because "the law is clear that the FTCA does not waive the sovereign immunity of the United States for constitutional claims.").

A.      **Fourteenth Amendment Claims**

To the extent that the Court reads the Amended Complaint as alleging "due process" and "equal protection" claims under the Fourteenth Amendment against Defendants, such claims should be dismissed because the Fourteenth Amendment applies to state actions, not to conduct of the federal government.  S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987); Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146, 153 (D.D.C. 2007) ("[B]y its terms, the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia.").

B.      **Fifth Amendment Claims**

1.      **Procedural Due Process Claim**

Plaintiff alleges that the Department "violated the Plaintiff[']s civil rights, depriving him of his property, through no due process of the Plaintiff's ownership of his intellectual property design." Ex. A ¶ 3; see also id. ¶¶ 8, 14, 15, 48, 51.  To the extent such allegations can be construed as attempting to assert any due process claim, it would be a procedural due process claim under the Fifth Amendment, and the claim should be dismissed by the Court.  To state a constitutional violation of a procedural due process right, a plaintiff must allege facts showing that (i) he was deprived of a liberty or property interest that warrants due process protection, and (ii) the deprivation occurred without constitutionally sufficient procedures.  Mathews v. Eldridge, 424 U.S. 319, 332-36 (1976); Jafarzadeh v. Nielsen, 321 F. Supp. 3d 19, 47 (D.D.C. 2018) ("To state a procedural due process claim, plaintiffs must plausibly allege, first, that 'there exists a liberty or property interest of which a person has been deprived,' and second, that the procedures the government provided were constitutionally inadequate." (quoting Swarthout v. Cooke, 562 U.S. 216, 219 (2011)).

"To determine whether [a plaintiff] has stated a claim, [the court] must first determine whether [the plaintiff] has a property interest that triggers Fifth Amendment due process protection."  C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 200 (D.C. Cir. 2002) (internal quotations omitted).  Property interests subject to Fifth Amendment protection "are not created by the Constitution"; rather, they "are derived from independent sources, such as state or federal law, statutes, regulations, contracts, or other existing rules or understandings." Humberson v. U.S. Attorney's Off. for D.C., 236 F. Supp. 2d 28, 30 (D.D.C. 2003), aff'd, No. 03-5073, 2003 WL 21768064 (D.C. Cir. July 16, 2003).

Here, Plaintiff seems to allege a property interest in the "confidential" information about his contact-tracing application, see Ex. A ¶¶ 8, 14, 15, 48; Ex. A at 11; however, Plaintiff fails to identify any statute, regulation, contract, or other existing rule or understanding that created a property interest in the allegedly "confidential" information that he disclosed to Defendants. Additionally, to the extent that Plaintiff would assert that a property interest existed because the confidential information constituted a "trade secret," this argument fails because, as discussed above, Plaintiff cannot establish that the information was a trade secret.  See, supra, Section I.B.1. Consequently, he has not established a property interest upon which a due process claim can be based and his due process claim should be dismissed.

Plaintiff's claim also fails because, "[a]t a minimum, a procedural due process claim 'requires the plaintiff to identify the process that is due.'"  Medina v. District of Columbia, 517 F. Supp. 2d 272, 281 (D.D.C. 2007) (quoting Doe v. District of Columbia, 93 F.3d 861, 870 (D.C. Cir. 1996)); see also Elkins v. District of Columbia, 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a procedural due process claim, a complaint must suggest 'what sort of process is due.'").  Here, Plaintiff simply makes conclusory assertions that Defendants "depriv[ed] him of his property[]

through no due process" but such bare allegations do not meet the threshold requirement that he identify the process that is due.  This alone is a basis for dismissing any procedural due process claim.  See Morello v. District of Columbia, 621 F. App'x 1, 2 (D.C. Cir. 2015) ("Assuming that [plaintiff] intends to state procedural due process violations, he does not allege what process he is due, which alone warrants dismissal."); Lewis v. District of Columbia, 161 F. Supp. 3d 15, 30–31 (D.D.C. 2015) (dismissing plaintiff's due process claims in her Amended Complaint upon a finding that  "[b]ecause [the complaint] is devoid of allegations as to the actual process purportedly denied . . . , the Amended Complaint does not raise [plaintiff's] procedural due process claim 'above the speculative level' to the realm of plausibility.").

### 2. Takings Clause Claims

Plaintiff also alleges that his due process rights were violated because his allegedly "confidential" contact tracing "innovation" was "encroached" and developed "illegally in various states by companies" and universities.  Ex. A ¶¶ 8, 14, 15, 48.  While Plaintiff's Amended Complaint uses the term "due process" when discussing allegations associated with his claim that his "product concept and product design was encroached", the substance of these allegations appear to be more appropriately analyzed under the Takings Clause of the Fifth Amendment rather than the Due Process Clause.  The Fifth Amendment forbids the [government from] taking of private property for public use without just compensation."  Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 336 (2002).  The protections of the Takings Clause apply to real property, see Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019 (1992), personal property, see Andrus v. Allard, 444 U.S. 51, 65 (1979), and intangible property, including intellectual property and trade secrets, see Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003–04 (1984).  A

taking may occur either by physical invasion or by regulation.  See, e.g., Lucas, 505 U.S. at 1014–19; Pa. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922).

"It is customary to begin an analysis of a takings issue by determining whether a bona fide property right exists, because in the absence of such an entitlement there can be no constitutional violation."  Petrolite Corp. v. EPA, 519 F. Supp. 966, 970 (D.D.C. 1981); Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 125 (1978) (explaining that the Takings Clause is not implicated unless the plaintiff demonstrates that it possesses a constitutionally protected property interest).  "A property interest is the same under the Fifth Amendment [takings] clause as under the Fifth Amendment [due process] clause."  UMC Dev., LLC v. District of Columbia, 401 F. Supp. 3d 140, 155 (D.D.C. 2019) (citing Roth v. King, 449 F.3d 1272, 1286 (D.C. Cir. 2006)).  As discussed above, Plaintiff has not established the existence of any property interest that is constitutionally protected.

Even assuming for the sake of argument that Plaintiff had a property interest in the allegedly confidential information prior to its disclosure to Defendants, that property interest was extinguished through Plaintiff's conduct.  "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, . . . his property right is extinguished."  Ruckelshaus, 467 U.S. at 1002.  As discussed in section I.B.1 above, the BARDA website specifically stated that information provided to the government through the website should be "non-confidential," "will be used for market research," and "will be shared across U.S. Government agencies."   https://www.medicalcountermeasures.gov/request-barda-techwatch-meeting/ (visited 2/10/2021).  Therefore, even if Plaintiff did have some sort of property interest in his allegedly "confidential" contact-tracing innovation, he willingly provided that information to the government without any requirement of preserving confidentiality.  Having disclosed the

information in this manner, Plaintiff has not alleged facts showing that he has a property right in his "confidential" contact-tracing innovation and his claims under the Takings Clause should be dismissed.

### 3.   "Equal Protection" Claims Under the Fifth Amendment

"Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has found equal protection principles embodied in the Due Process Clause of the Fifth Amendment." Lillemoe v. U.S. Dep't of Agric., 344 F. Supp. 3d 215, 228 n.7 (D.D.C. 2018) (citing Bolling v. Sharpe, 347 U.S. 497, 499 (1954)).  The D.C. Circuit has explained that the "[e]qual protection analysis is substantially identical under the Fifth Amendment and the Fourteenth." Fraternal Order of Police v. United States, 152 F.3d 998, 1002 (D.C. Cir. 1998), reh'g granted on other grounds, 173 F.3d 898 (D.C. Cir. 1999).  "There are generally two means by which a plaintiff can allege an equal protection violation." Kelley v. District of Columbia, 893 F. Supp. 2d 115, 122 (D.D.C. 2012).  One way to assert a violation is for "[a]n individual [to] claim that he or she received differential treatment by the government due to membership in a protected class, such as one based on race, national origin, or gender." Id.  Here, Plaintiff does not identify any protected class of which he is a member, nor does he allege that he was treated differently than others because of his membership in a protected class.  See generally Ex. A at 12-17.

The second way to assert an equal protection violation is for an individual to claim he "[was] arbitrarily and intentionally treated differently from others who are similarly situated—and the government has no rational basis for the disparity." Kelley, 893 F. Supp. 2d at 122 (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000) (per curiam)).  This is what the Supreme Court has recognized as an equal protection claim brought by a "class of one." Vill. of

20

Willowbrook, 528 U.S. at 564.  There are "two essential elements" to a successful "'class of one' equal protection claim:  (1) disparate treatment of similarly situated parties (2) on no rational basis."  3883 Connecticut LLC v. District of Columbia, 336 F.3d 1068, 1075 (D.C. Cir. 2003).

"The threshold inquiry in evaluating [a class of one] equal protection claim is . . . to determine whether a person is similarly situated to those persons who allegedly received favorable treatment."  Women Prisoners of D.C. Dep't of Corr. v. District of Columbia, 93 F.3d 910, 924 (D.C. Cir. 1996).  "Th[e] requirement [of identifying similarly situated persons] is not a mere formality.  Rather, it serves to distinguish claims to the treatment that was afforded others, which can be cognizable under principles of equal protection, from bare complaints of governmental unfairness, which cannot."  Quezada v. Marshall, 915 F. Supp. 2d 129, 135 (D.D.C. 2013) (ellipses in original).  Consequently, where, as here, the plaintiff "fails to allege the first element: the existence of a 'similarly situated person . . . who was treated differently'", his equal protection claim should be dismissed for failure to state a claim.  See id.

## III.    Plaintiff's Claim Brought Under the Trade Secrets Act, 18 U.S.C. § 1905, Should Be Dismissed for Lack of Jurisdiction

Plaintiff's claim based on 18 U.S.C. § 1905, also known as the Trade Secrets Act, is grounded on allegations that the Department and/or BARDA officials disclosed confidential information in violation of the Act.  Ex. A ¶¶ 8, 14, 45.  The Court should dismiss this claim because the Trade Secrets Act "is a criminal statute and does not create a private right of action." Venetian Casino Resort, LLC v. EEOC, 530 F.3d 925, 931–32 (D.C. Cir. 2008).

Notably, although "the Trade Secrets Act does not furnish a private cause of action against governmental disclosure, it can be relied upon in challenging agency action that violates its terms as 'contrary to law' within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

(1988)."  <u>McDonnell Douglas Corp. v. Widnall</u>, 57 F.3d 1162, 1164 (D.C. Cir. 1995).  This is because

> [t]he Supreme Court [has] held that a decision to disclose is an 'agency action' under Section 10 of the APA and that a disclosure which would arguably violate the Trade Secrets Act is reviewable as an action 'not authorized by law.'  A private cause of action thus exists, for the supplier of data—a person 'adversely affected or aggrieved.'"

<u>Megapulse, Inc. v. Lewis</u>, 672 F.2d 959, 965–66 (D.C. Cir. 1982) (quoting <u>Chrysler Corp. v. Brown,</u> 441 U.S. 281, 317–19 (1979)).  Accordingly, Defendants will briefly address why Plaintiff's Trade Secrets Act claim would still be subject to dismissal even if the Court construed it as an APA claim alleging Defendants performed an agency action that violated the Trade Secrets Act.

Simply put, "the Trade Secrets Act prohibits Government personnel from disclosing several types of confidential information unless 'authorized by law.'"  <u>Canadian Com. Corp. v. Dep't of Air Force</u>, 514 F.3d 37, 39 (D.C. Cir. 2008); <u>see</u> 18 U.S.C. § 1905 (prohibiting "[a]n officer or employee of the United States or of any department or agency thereof" from disclosing "in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties . . .  which . . . concerns or relates to the trade secrets, processes, operations, style of work, or apparatus.").  The D.C. Circuit has explained that "disclosure of information does not violate the [Trade Secrets Act] merely because that information was labeled 'confidential' by the submitter."  <u>Venetian Casino Resort</u>, 530 F.3d at 932.

When reviewing APA claims premised on a violation of 18 U.S.C. § 1905, courts generally look to Exemption 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(4), to determine the parameters of what information is protected from disclosure.  To be protected by

Exemption 4, information must satisfy three criteria:  it must be (i) commercial or financial, (ii) obtained from a person, and (iii) privileged or confidential.  Pub. Citizen Health Rsch. Grp. v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983); Food Mktg. Inst. v. Argus Leader, 139 S. Ct. 2356, 2360 (2019).  Courts have determined that the Trade Secrets Act does not impose a broader definition of "confidentiality" than does trade secret exemption under FOIA Exemption 4.  Canal Ref. Co. v. Corrallo, 616 F. Supp. 1035, 1042 (D.D.C. 1985) (explaining that "ample judicial precedent supports the conclusion that Exemption 4 and § 1905 are 'coextensive'" (citing cases from D.C. Circuit and Fourth Circuit)).  "Accordingly, if the documents are not deemed confidential pursuant to Exemption 4, they will not be protected under the Trade Secrets Act." Alexander & Alexander Servs., Inc. v. SEC, Civ. A. No. 92-1112 (JHG), 1993 WL 439799, at *9 (D.D.C. Oct. 19, 1993).[8]

In Food Marketing Institute, the Supreme Court articulated that "confidential," as it is used in Exemption 4, must be given its "ordinary, contemporary, common meaning" at the time the statute was enacted in 1966 and that "[t]he term 'confidential' meant then, as it does now, 'private' or 'secret.'"  Food Mktg. Inst., 139 S. Ct. at 2362–63 (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)).  The Supreme Court further suggested two conditions that may evidence whether information is "confidential."  Id. at 2363.  First, "information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it."  Id.  This condition is mandatory, and applies whether the information was provided to a government agency voluntarily or otherwise.  Id.  Second, "information might be considered

---

[8]    See also Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n, 750 F.2d 1394, 1401 (7th Cir. 1984) ("If a supposed trade secret is not protected by [Exemption 4], . . . then the Trade Secrets Act by its own terms does not forbid [disclosure]."); JCI Metal Prods. v. Dep't of Navy, Civ. A. No. 09-2139, 2010 WL 2925436, at *8 (S.D. Cal. July 23, 2010) ("if the information is not protected by Exemption 4, it is not protected by the Trade Secrets Act").

confidential only if the party receiving it provides some assurance that it will remain secret."  Id.

The Court did not "need to resolve" whether the second condition was necessary in every case, but

Courts in this jurisdiction that have since addressed the issue have held that this prong is at least

relevant to determining whether commercial information is "confidential."  Shapiro v. Dep't of

Just., Civ. A. No. 12-0313 (BAH) 2020 WL 3615511 at *26 (July 2, 2020); Ctr. for Investigative

Reporting v. U.S. Customs & Border Prot., 436 F. Supp. 3d 90, 109 (D.D.C. 2019).

Here, Plaintiff cannot establish that the allegedly disclosed information was commercial

information or that it was confidential within the meaning of Exemption 4 and the Trade Secrets

Act.  Instead of including any factual allegations that might allow one to assess whether the

information fits within the parameters of FOIA Exemption 4 and the Trade Secrets Act, Plaintiff

has only made conclusory assertions about inventing a "breakthrough contact tracing app" and

he's coupled this with statements professing his unsubstantiated belief that Defendants must have

disclosed some unidentified information about the application merely because someone other than

Plaintiff is now marketing a contact tracing application.  Indeed, given that Plaintiff has failed to

provide sufficient information about the "confidential" information he alleges was disclosed, one

cannot even determine whether it is the type of information that "is customarily kept private, or at

least closely held, by the person imparting it."

Here, the facts are clear:  Plaintiff admits that he voluntarily submitted information that he

now alleges was confidential to a website that informed him not to submit confidential information

and explicitly advised that any submissions would be shared.  Although the Supreme Court's Food

Marketing Institute decision stopped short of saying receipt of assurance of confidentiality was a

requirement for classifying information as confidential, it cannot be denied that Plaintiff's

submission of information to BARDA in the face of explicit assurances that the information would

not be kept confidential weighs very heavily in favor of not classifying the information as "secret" or "confidential." See WP Co. LLC v. U.S. Small Bus. Admin., No. CV 20-1240 (JEB), 2020 WL 6504534, at *9 (D.D.C. Nov. 5, 2020) (rejecting claim of confidentiality where "the Government not only provided no assurance of privacy, but also told [the supplier of the information] explicitly that the information would be disclosed"); Besson v. U.S. Dep't of Com., Civ. A. No. 18-2527 (APM), 2020 WL 4500894 (D.D.C. Aug. 5, 2020) (reflecting that whether assurances of confidentiality were provided by recipient is relevant to confidentiality analysis).

**IV.     Plaintiff's Antitrust Claims Should Be Dismissed**

Plaintiff's antitrust-related claims stem from allegations that he sent an unsolicited email to the Secretary of the Department, the Assistant Secretary of the Department, and the Surgeon General regarding his contact tracing app and that these individuals conspired not to respond to his emails in violation of the Sherman Antitrust Act.  See Ex. A ¶ 38 ("three people intentionally conspiring to overlook an emergency resolution to a problem is a violation of the Sherman Antitrust Act for monopolies and unfair commerce practices, 15 U.S.C Section 2").  Plaintiff also appears to claim that the Department and BARDA acted as a monopoly by refusing to do business with him. Ex. A ¶ 55.  Based on these allegations, Plaintiff attempts to assert violations of multiple antitrust-related provisions:

- Sherman Antitrust Act:
    - 15 U.S.C. § 2, see Ex. A ¶¶ 38, 45;
    - 15 U.S.C. § 4, see id. ¶¶ 45, 47, 48;
- Federal Trade Commission Act:
    - 15 U.S.C. § 45, see id.  ¶¶ 4, 15, 47, 48; and
- unspecified sections of Title 15 of the U.S. Code, see id. ¶ 45.

25

Plaintiff's claims based on 15 U.S.C. §§ 2, 4, and 45 should be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction.  Claims based on other unspecified sections of Title 15 of the U.S. Code should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

### A.  Plaintiff's Claims Under the Sherman Antitrust Act, 15 U.S.C. §§ 2 & 4, Should Be Dismissed for Lack of Jurisdiction or Failure to State a Claim

This Court lacks jurisdiction over claims brought by Plaintiff under the Sherman Antitrust Act, 15 U.S.C. § 2, because "the United States, its agencies and officials, [are] outside the reach of the Sherman Act."  Sea-Land Serv., Inc. v. Alaska R.R., 659 F.2d 243, 246 (D.C. Cir. 1981), cert. denied, 455 U.S. 919 (1982); 15 U.S.C.§ 7 (reflecting that definition of "person" or "persons" within the Sherman Antitrust Act does not include the Federal Government).  The Sea-Land Court relied primarily on the Supreme Court's decision in United States v. Cooper Corp., 312 U.S. 600, 604-05 (1941), holding that the term "person" in the Sherman Act could not be construed to include the sovereign, absent a strong indication of legislative intent to the contrary.  Since then, courts have uniformly followed Cooper in holding that the United States, its agencies, and officials remain, as a matter of sovereign immunity, outside the reach of antitrust laws.   The Court should dismiss this claim pursuant to Rule 12(b)(1).[9]

Additionally, although Plaintiff cites to Section 4 of the Sherman Antitrust Act, 15 U.S.C. § 4, this section also does not provide a basis for Defendants' liability because this section does not provide a separate cause of action.  Section 4 merely sets forth, in relevant part, that this Court has "jurisdiction to prevent and restrain violations of [15 U.S.C. § 2]" and that "it shall be the duty

---

[9] To the extent that Section 2 is a criminal statute, as noted above, no private right of action exists to enforce this or any other criminal statute.  See Ahuruonye v. Dep't of Interior, 312 F. Supp. 3d 1, 12 (D.D.C. 2018).  And, the Court does not have jurisdiction to hear allegations of criminal conduct that are brought by anyone other than the United States.  See, e.g., United States v. Nixon, 418 U.S. 683, 693 (1974).  The Court should dismiss this claim pursuant to Rule 12(b)(1).

of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations." 15 U.S.C. § 4.

**B.     Plaintiff's Claims Under the Federal Trade Commission Act, 15 U.S.C. § 45, Should Be Dismissed for Lack of Jurisdiction.**

Plaintiff's claim brought under 15 U.S.C. § 45 should be dismissed for lack of subject matter jurisdiction because there is no private cause of action to enforce this federal criminal statute. As this Court recently explained:

> Section 45(a)(1) of Title 15 makes unlawful "[u]nfair methods of competition" and "unfair or deceptive acts or practices[,]" 15 U.S.C. § 45(a)(1); see also 16 C.F.R. §§ 233.1, 233.3, but "[t]he [FTC] Act nowhere purports to confer upon private individuals, either consumers or business competitors, a right of action to enjoin the practices prohibited by the Act or to obtain damages following the commission of such acts." Holloway v. Bristol-Myers Corp., 485 F.2d 986, 988–89 (D.C. Cir. 1973). And as the Supreme Court explained in Merrell Dow Pharmaceuticals Inc. v. Thompson, "the congressional determination that there should be no federal remedy for the violation of [a] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." Merrell Dow, 478 U.S. at 814.

Inst. for Truth in Mktg. v. Total Health Network Corp., 321 F. Supp. 3d 76, 86 (D.D.C. 2018). The Federal Trade Commission is vested with the authority and responsibility for enforcing 15 U.S.C. § 45. See Fed. Trade Comm'n v. Sysco Corp., 113 F. Supp. 3d 1, 20 (D.D.C. 2015). Therefore, Plaintiff's claims brought under 15 U.S.C. § 45, must be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction.

**C.     Plaintiff's Claims Under Unspecified Section of Title 15 of the U.S. Code Should Be Dismissed for Failure to State a Claim**

To the extent that Plaintiff claims violations of other unspecified sections of Title 15 of the U.S. Code, such claims should be dismissed for failure to state a claim. See 2301 M Cinema LLC

v. Silver Cinemas Acquisition Co., 342 F. Supp. 3d 126, 131 (D.D.C. 2018) ("To survive a 12(b)(6)

motion to dismiss a claim in an antitrust case, plaintiffs must do more than simply paraphrase the

language of the antitrust laws or state in conclusory terms that the non-movant has violated those

laws." (citations omitted)).  "[I]f [the plaintiff] claims an antitrust violation, but the facts he

narrates do not at least outline or adumbrate such a violation, he will get nowhere merely by

dressing them up in the language of antitrust."  Dial A Car, Inc. v. Transp., Inc., 884 F. Supp. 584,

588 (D.D.C. 1995) (quoting Sutliff, Inc. v. Donovan Cos., Inc., 727 F.2d 648 (7th Cir. 1984))

(internal quotation marks omitted)); see also Johnson v. Comm'n on Presidential Debates, 202 F.

Supp. 3d 159, 170 (D.D.C. 2016), aff'd, 869 F.3d 976 (D.C. Cir. 2017) ("Antitrust standing

requires a plaintiff to show an actual or threatened injury of the type that the antitrust laws were

intended to prevent that was caused by the defendant's alleged wrongdoing[; a]ntitrust laws were

designed to protect competition, not competitors." (citations and internal quotation marks

omitted)).  Here, Plaintiff's generic reference to unspecified sections of Title 15 of the U.S. Code

fail to meet his burden to plead facts that establish a plausible antitrust claim; thus, the Court should

dismiss the claims under Rule 12(b)(6).

## V.    Plaintiff's Claims Under the American Inventors Protection Act, 35 U.S.C. § 297(b), Should Be Dismissed for Failure to State a Claim

Plaintiff's claim alleging violation of 35 U.S.C. § 297(b) should be dismissed under Rule

12(b)(6) because Plaintiff has failed to state a claim.  "Congress enacted the Inventors' Rights Act

of 1999, 35 U.S.C. § 297, to protect inventors from invention promotion scams and the deceptive

advertising related to them by authorizing the [U.S. Patent and Trademark Office] to publicize

complaints that it receives against invention promoters."  Invention Submission Corp. v. Rogan,

357 F.3d 452, 454 (4th Cir. 2004).  Section 297(b) provides a cause of action for

> [a]ny customer who enters into a contract with an invention
> promoter and who is found by a court to have been injured by any

28

> material false or fraudulent statement or representation, or any
> omission of material fact, by that invention promoter (or any agent,
> employee, director, officer, partner, or independent contractor of
> such invention promoter), or by the failure of that invention
> promoter to disclose such information as required under subsection
> (a) may recover in a civil action against the invention promoter (or
> the officers, directors, or partners of such invention promoter).

35 U.S.C. § 297(b).

Plaintiff's attempt to assert a claim under the statute fails because the plain language of the statute exempts the federal government and its agencies from the statute's purview. More specifically, 35 U.S.C. § 297(c)(3)(A)—which states the "Definitions" for applying the statute— makes clear that "the term 'invention promoter' does not include any department or agency of the Federal Government or of a State or local government." Moreover, even if Federal government agencies fell within the definition of an "invention promoter," Plaintiff still could not succeed on a claim because the statute only allows civil actions to be brought by a "customer <u>who enters into a contract</u> with an invention promoter." Plaintiff cannot point to any contract he had with Defendants related to his alleged invention. Plaintiff also cannot point to any fraudulent statement or representation, omission of material fact or failure to disclose information committed by the Defendants that caused him injury. Consequently, this claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

**VI.    Plaintiff's Patent Infringement Claims Against the United States Should Be Dismissed for Lack of Jurisdiction.**

To the extent that Plaintiff seeks to sue the United States for patent infringement, the Court lacks jurisdiction because such claims can only be brought in the U.S. Court of Federal Claims.[10]

---

[10]    Defendants construe the Amended Complaint as potentially attempting to assert a patent infringement claim because it refers to Plaintiff's "product design" being "encroached" or "infringed," <u>see</u> Ex. A ¶¶ 1, 6, 8, 35, 48, 52, 54, he alleges that the government induced infringement of his confidential information, and he cites to an unrelated patent infringement

<u>See</u> 28 U.S.C. § 1498(a) ("Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery.").

Furthermore, even if this Court had jurisdiction, Plaintiff's claim should still be dismissed because Plaintiff has not indicated that he has a patent, which is a prerequisite for pursuing a claim under 28 U.S.C. § 1498.  <u>See</u> <u>Stroughter v. United States</u>, 89 Fed. Cl. 755, 762 (2009).  Indeed, Plaintiff acknowledges that whatever allegedly "confidential scientific development" he has is not patented.  <u>See</u> Ex. A ¶ 52 ("[T]his confidential scientific development is infringed through the fact that one must give an [sic] period to properly register his work for legal ownership especially during this economic reduction in workforce time through which the patent office is backlogged.").  Therefore, any claim against the United States for patent infringement should be dismissed for lack of jurisdiction under Rule 12(b)(1).

*      *      *

---

litigation involving Gilead Sciences, Inc. and the Department, <u>United States v. Gilead Scis., Inc.</u>, No. 1:19-cv-02103-UNA (D. Del. Nov. 6, 2019), <u>see</u> <u>id</u> at ¶¶ 1, 2, 17, 46.

## **CONCLUSION**

For the reasons discussed above, Defendants respectfully request that the Court dismiss all

of Plaintiff's claims with prejudice.

March 30, 2021                              Respectfully submitted,

                                           CHANNING D. PHILLIPS, D.C. Bar No. 415793
                                           Acting United States Attorney

                                           BRIAN P. HUDAK
                                           Acting Chief, Civil Division

                                           By: /s/ April Denise Seabrook
Of Counsel:                                APRIL DENISE SEABROOK, D.C. Bar No. 993730
CONRAD J. DeWITTE, JR.                      Assistant United States Attorney
D.C. Bar No. 236156                        555 Fourth Street, N.W.
Department of Justice                      Washington, D.C. 20530
                                           Telephone: 202-252-2525
                                           April.Seabrook@usdoj.gov

                                           COUNSEL FOR THE DEFENDANT

31